McFarland, J.,
delivered tbe opinion of tbe court:
Tbe complainants are tbe children of Joba TI. and Mariana Stephenson. They claim a resulting trust in cer *572 tain real estate conveyed by Wm. Fellows to their father, John H. Stephenson, by deed of the 31st May, 1854, the deed conveying the property to John H. Stephenson in fee without any trust declared.
The ground of complainants’ claim is, that on the 3d day of November, 1849, their father, JohnTI. Stephenson, conveyed to Anderson Henderson certain real estate and slaves in trust, for the use of his wife, their mother, and themselves; and that afterwar'ds with the rents of said real estate, and the proceeds of the sale of one of'the slaves, he purchased the property in controversy from Fellows, and took the deed first above referred to, to himself.
W© agree very fully with the chancellor in denying the relief upon several grounds.
1st. The deed of the 3d November, 1849, declares that it was “in trust to allow the said Mariana Stephenson to receive the rents and profits of the land and hires of the slaves during coverture, free from the debts of said John H., for the support and maintenance of her, the said Mariana and her children, and upon the termination of the coverture, to convey the property to the children of said John TI. and Mariana.”
Upon this we hold that the children were not vested with any express equity in the rents of the land and hires of the slaves during the coverture, but the same were secured to their mother, to be used by her, it is true, for the support of herself and children; but the express terms of the deed direct that she be allowed to receive said rents and hires, and if they were received by her, or disposed of by her direction or consent, the complainants cannot follow the money. The equity secured to them by the deed was the property itself, upon the termination of the cover-ture.
.The bill does not explicitly charge that the rents and hires were received by John FI. Stephenson upon an. express undertaking to purchase the property in question *573 therewith, either for the benefit of complainants or their mother. It charges in very general terms that he received the rents and hires upon his promise to carry out the terms of the trust, which he did in part, but as to part of the fund he violated the trust by purchasing the property in dispute therewith, and taking the title in his own name.
It shows clearly, as does the proof, that he was allowed, by the consent of the said Mariana, to receive pretty much the entire proceeds of the trust property, and have the management thereof. If all other difficulties were out of the way, we should say that the proof falls far short of malting out the facts upon which the trust is claimed with that degree of clearness and certainty required to establish a trust against the only written evidence. Only one competent witness speaks upon the subject. She is the aunt of the complainants, and while she speaks in very positive terms, her testimony fails to satisfy us. She speaks of family conversations after the lapse of many years, and in one respect as to which she is very positive, she seems clearly to have been mistaken. She says one of the slaves, Emeline, was sold for the purpose of paying for the land in question, and the money so used, while it appears that Fellows conveyed the land to Stephenson on the 31st of May, 1854, the deed acknowledging the receipt of the purchase money at that date. It is not insisted that there is anything to contradict this recital, and it fully appears that Emeline was not sold until the 22d August, 1854.
It has been repeatedly held, and certainly upon sound, reasons, that trusts of this character -ought not to be set up, except upon the clearest and most satisfactory evidence; and the entire circumstances of this case show that this certainly has not been made to appear in the proof.
The testimony of Mrs. Stephenson as to statements made to her by her husband during coverture are clearly incompetent, as we have repeatedly held, and the declaration of Stephenson made after his conveyances to the other de *574 fendants are not admissible to prejudice the rights of these defendants, and support the claim of the complainants, and would be entitled to but little weight, if admissible.
The decree of the chancellor dismissing the bill will be affirmed, with costs.